RAIL

No. 24-11058-H*H*

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**Jacqueline Everson,** *Plaintiff-Appellant,*

**V.**

**Coca-Cola Company, et al,** *Defendant-Appellee.*

**On Appeal from the United States District Court**
**For the Northern District of Georgia**

**No. 1:23-cv-02947-MLB**

## APPELLANT'S MOTION TO STAY THE MANDATE
## PENDING PETITION FOR WRIT OF CERTIORARI

**Jacqueline Everson, pro se**
**1530 Locust Log Way**
**Austell, GA 30168**
**(770) 573-4038**
**jaccieverson@gmail.com**

U.S. COURT OF APPEALS
RECEIVED
CLERK
FEB 10 2025
ATLANTA, GA



**Jacqueline Everson v. Coca-Cola Company, et al.     Case No. 24-11058-H**

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to F.R.A.P. 26.1-2(c), Jacqueline R. Everson, pro se Plaintiff-

Appellant certifies that the following is a complete list of the persons and entitles

who have an interest in the outcome of this appeal:

Brasher, Hon. Andrew L., United States Appeals Court Judge

Brown, Hon. Michael L., United States District Court Judge

Drew Eckl & Farnham, LLP, counsel for Defendant-Appellee Liberty Mutual

Insurance Company

Everson, Jacqueline R., pro se Plaintiff-Appellant

Foote, Elliott, counsel for Appellee The Coca-Cola Company

Johnson, Brian Wade, counsel for Defendant-Appellee Liberty Mutual Ins. Co.

King & Spalding, LLP, counsel for Defendant-Appellee The Coca-Cola Co.

Law Offices of Iwana Rademaekers, P.C., counsel for Defendant-Appellee

Liberty Mutual Insurance Company

Liberty Mutual Insurance Company, Defendant-Appellee

Pryor, Hon. Jill A., United States Appeals Court Judge

Rademaekers, Iwana, counsel for Appellee Liberty Mutual Insurance Co.

Shuler, Darren A., counsel for Appellee The Coca-Cola Company

U.S. COURT OF APPEALS
RECEIVED
CLERK
FEB 1 0 2025
ATLANTA, GA

**Jacqueline Everson v. Coca-Cola Company, et al.**   Case No. 24-11058-H

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Story, Hon. Richard W., United States District Court Judge

The Coca-Cola Company, Defendant-Appellee

Tjoflat, Hon. Gerald Bard, United States Appeals Court Judge

There is no such parent corporation and no such publicly held corporations

related to Jacqueline R. Everson, Plaintiff-Appellant.

Respectfully, submitted this 10th day of February, 2025.

Jacqueline Everson, pro se
1530 Locust Log Way
Austell, GA 30168
(770) 573-4038

# Table of Contents

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement ...... C-1

Table of Contents ..................................................................................... i

Table of Authorities................................................................................. iii

    I.   Introduction........................................................................... 1

    II.   Argument ............................................................................ 2

        A.   Standard for Granting Motion........................................... 2

        B.   Plaintiff's Petition for Writ of Certiorari
            Will Present Substantial Questions................................. 3

            1. The Panel Opinion's Interpretation of ERISA
               Conflicts with Supreme Court Precedent Regarding
               Statutory Interpretation........................................ 3

                 a. Statutory Interpretation Should Not Render Other
                    Provisions of the Statute Superfluous ................. 3

            2. The Panel Opinion's Interpretation of ADA
               Conflicts with Supreme Court Precedent Regarding
               Statutory Interpretation........................................ 5

                 a. Statutory Interpretation Should Not Render Other
                    Provisions of the Statute Superfluous ................. 5

            3. The Panel Opinion's Interpretation of Section 9-3-96 (2020)
               Conflicts with Supreme Court Precedent Regarding
               Statutory Interpretation........................................ 7

                 a. Statutory Interpretation Should Not Render Other
                    Provisions of the Statute Superfluous ................. 7

C.   The Panel Opinion's Conflicts with Supreme Court Precedent Regarding Due Process and the Plain Meaning Rule ............... 9

D.   Absent a Stay, Defendant Would Suffer Irreparable Harm and the Balance of Equities Favors Granting a Stay ..................... 10

Conclusion ................................................................................................. 11

Certificate of Compliance ......................................................................... 12

Certificate of Service ................................................................................ 13

# Table of Authorities

## Supreme Court of the United States

Page(s)

*Araneta v. United States*, 478 U.S. 1301 (1986)...................................... 10

*Caminetti v. United States*, 242 U.S. 470 (1917)..............................5-6, 8-9

*Foster v. United States*, 303 U.S. 118, 120 (1938) .........................5-6, 8-9

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26, 36 (1998) ........................................................................ 3, 5, 7

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)................................ 9

*Mattox v. United States*,
156 U.S. 237, 244, 15 S. Ct. 337, 39 L. Ed. 409 (1895)........................ 9

<u>*Mullane v. Central Hanover Bank*</u> *& Trust Co.*,
339 U.S. 306 (1950) .............................................................................. 9

*Planned Parenthood of Southeastern Pa. v. Casey*,
510 U.S. 1309, 1310 (1994) .................................................................. 2

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63, 67 (2020) ....................................................................... 10

*TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ..............................4-5, 7

*United States v. Pete*,
525 F.3d 844, 851 n.9 (9th Cir. 2008)................................................... 2

*United States v. Viscio* (426 U.S. 61, 1976).......................................... 11

**United States Courts of Appeals**

**Page(s)**

*Al-Marbu v. Mukasey,*
525 F.3d 497, 498-99 (7th Cir. 2008) ......................................................... 2

*United States v. Ron Pair Enterprises, Inc.,*
872 F.2d 778 (6th Cir. 1989) ................................................... 5-6  8-10

**Federal Court Rules**

S. Ct. R. 10(c) .................................................................................... 3

Fed. R. App. P. 41(d)(2)(A) ...................................................... 1-2

Fed. R. App. P. 41(d)(2)(B) ........................................................ 10

O.C.G.A. § 9-3-96 (2020) ......................................................... 7-8

**State Statutes**

29 U.S.C. § 502(a)(3) .................................................................. 4

29 U.S.C. § 502(1) ....................................................................... 4

29 U.S.C. § 1132(a) ................................................................... 3-4

29 U.S.C. § 1113(2) .............................................................. 4, 7-8

42 U.S.C. § 12102(b) ................................................................ 5-6

42 U.S.C. § 12111 ........................................................................ 6

42 U.S.C. § 12112(a) ................................................................ 5-6

42 U.S.C. § 12112(b)(1) .............................................................. 6

42 U.S.C. § 12112(b)(2) .............................................................. 6

**State Statutes**

                                                            **Page(s)**

42 U.S.C. § 12112(b)(3) ................................................................ 6

O.C.G.A. § 9-3-96 (2020) ........................................................... 7-8

## I.    Introduction

Pursuant to Eleventh Circuit Federal Rules of Appellate Procedure 41(d)(2)(A), Plaintiff-Appellate Jacqueline Everson brings this motion for a stay of issuance of the mandate for a period of 90 days, pending Plaintiffs' forthcoming petition for a writ of certiorari in the U.S. Supreme Court. A certiorari petition by Plaintiff would present substantial and meritorious questions arising from the panel's decision, including: (1) whether the Eleventh Circuit interpreted provisions of the Employee Retirement Income Security Act ("ERISA") in accordance with Supreme Court precedent concerning statutory interpretation; (2) whether the Eleventh Circuit interpreted provisions of Title I, Americans with Disabilities Act, 1990 ("ADA") in accordance with Supreme Court precedent concerning statutory interpretation; (3) whether the panel's opinion's followed Actual Fraud precedent requiring statutory interpretation; and (4) whether the Eleventh Circuit applied Fifth Amendment procedural due process principles and the plain meaning rule as required when interpreting a civil statute.

Good cause exists for a stay; Plaintiff would be irreparably harmed absent a stay due to a disability and the loss of Fifth Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. This motion is meritorious; concerns issues of great importance, and favors a granting of a stay on the mandate. Fed. R. App. P. 41(d)(2)(A).

1

## II. Argument

### A. Standard for Granting Motion

This Court has held:

> A [motion to stay a circuit court mandate] must show that
> the petition would present a substantial question(s) and
> there is good cause for a stay. [Fed. R. App. P.] 41(d)(2)(A)

*United States v. Pete*, 525 F.3d 844, 851 n.9 (9th Cir. 2008).

"To satisfy the "substantial question" and "good cause" requirements, a party seeking a stay must show that: (1) there is a reasonable probability that the Supreme Court will grant certiorari on merits; (2) there is at least a fair prospect that it will reverse this Court's decision; and (3) the moving party's position is; disabled, unable to work since 2003, and there is a likelihood of irreparable harm if a stay is not granted. *See Al-Marbu v. Mukasey*, 525 F.3d 497, 498-99 (7th Cir. 2008). *see also Planned Parenthood of Southeastern Pa. v. Casey*, 510 U.S. 1309, 1310 (1994) (Souter, J., in chambers) ("The conditions that must be shown to be satisfied before a Circuit Justice may grant such an application are familiar: a likelihood of irreparable injury that, assuming the correctness of the applicants' position, would result were a stay not issued; a reasonable probability that the Court will grant certiorari; and a fair prospect that the applicant will ultimately prevail on the merits[.]").Fed. R. App. P. 41(d)(2)(A).

**B. Plaintiff's Petition for Writ of Certiorari
Will Present Substantial Questions**

Supreme Court Rule 10 provides that certiorari may be granted when "a United States court of appeals has decided an important question of federal law in a way that conflicts with relevant decisions of this Court." S. Ct. R. 10(c). The panel's holding in this case conflicts with Supreme Court precedent in three ways. (1) The panel's opinion conflicts with precedent requiring that statutes be interpreted as a whole; and in a manner that avoids rendering statutory provisions superfluous; (2) The panel's opinion ignores Fifth Amendment precedent prohibiting civil punishment under statutes requiring procedural due process, statutory interpretation and application of the plain meaning rule in interpreting unambiguous statutes.; and (3) The panel's opinion ignores judicial misconduct in cases requiring full disclosure of crucial information regarding necessary requirements.

**1. The Panel's Interpretation of Section 502(a)(1)(B) Conflict with Supreme Court Precedent Regarding Statutory Interpretation.**

*a. Statutory Interpretation Should Not Render Other Provisions of the Statute Superfluous.*

The Supreme Court has clearly stated that a statute's language must be interpreted in light of other sections of the statute. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36 (1998), 29 U.S.C. § 1132(a).

Various sections of a statute should be construed in concert so that "no clause, sentence or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

The panel's interpretation of Section 502(a)(1)(B) of the ERISA renders Section 413(2), as well as portions of numerous other ERISA provisions, superfluous. Section 502(a)(1)(B) is the legal mechanism for enforcing the standards established elsewhere in ERISA, while 413(2) determines the tolling of limitations for fraud under ERISA. 29 U.S.C. § 1113(2), 502(a)(1)(B). Under the panel's interpretation, "sponsor or obligor" and "must be party defendants" as used in Section 502(a)(1)(B) means "sponsor" and "core plan" is <u>not</u> required in ERISA disability cases. However, if that interpretation is correct, then Section 502(a)(1)(B) and 413(2) would not have to use the terms "sponsor or obligor" or "must be party defendants" when describing rules under ERISA. As a result, Section 502(a)(1)(B) and 413(2)'s use of those terms—is superfluous under the panel's opinion.[2] Additionally, the use of specific language enforcing the standards across all ERISA plans demonstrate congressional intent that those statutes use the same rules.

---

[1] "Section 413(2)" refers to 29 U.S.C. § 1113(2); "Section 502(a)(1)(B)" refers to 29 U.S.C. § 1132(a).

[2] A number of other ERISA provisions also use the terms "sponsor" to describe the "obligor" and, under the panel's opinion, those sections would also be superfluous. *See* 29 U.S.C. § 502(a)(3); 29 U.S.C. § 502(1).

*Foster v. United States*, 303 U.S. 118, 120 (1938).

Specifically, "prominent cases where courts applied the "plain meaning rule" include: "*Caminetti v. United States,* 242 U.S. 470 (1917), which emphasized adherence to plain meaning in the absence of ambiguity". "*United States v. Ron Pair Enterprises, Inc.* 872 F.2d 778 (6th Cir. 1989), reaffirms the primacy of plain language in statutory interpretation". The panel's opinion ignores this fundamental principle of statutory interpretation by using a different interpretation for "sponsor or obligor" in different cases and "no core plan" even though Congress purposefully used the same interpretation and requirements in all ERISA sections.

2.      **The Panel's Interpretation of Section 12102(b) Conflict with Supreme Court Precedent Regarding Statutory Interpretation.**

       *a.*      *Statutory Interpretation Should Not Render Other Provisions of the Statute Superfluous.*

The Supreme Court has clearly stated that a statute's language must be interpreted in light of other sections of the statute. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 36 (1998). Various sections of a statute should be construed in concert so that "no clause, sentence or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001).

The panel's interpretation of Section 12102(b) of the ADA renders Section 12112(a), and all ADA statutes that use the term "disability", superfluous. Section 12102(b) describes what evidence is needed as proof of disability under ADA,

while 12112(a) describes what evidence is needed as proof of employment discrimination against individuals with disabilities under ADA. 42 U.S.C. § 12112(a), 12102(b). Under the panel's interpretation, "record of such an impairment" as used in Section 12102(b) means "Social Security Disability Income" is not accepted as a record of such an impairment. However, if that interpretation is correct, then Section 12102(b) would not have to use the terms "record of such an impairment" to prove a "disability". As a result, Section 12102(b) and 12112(a)'s use of this term is superfluous under the panel's opinion[2].

Additionally, the use of specific language "disability" that applies to all statutes under ADA demonstrates congressional intent to use the same standard. *Foster v. United States*, 303 U.S. 118, 120 (1938).

Specifically, "prominent cases where courts applied the "plain meaning rule" include: "*Caminetti v. United States,* 242 U.S. 470 (1917), which emphasized adherence to plain meaning in the absence of ambiguity". "*United States v. Ron Pair Enterprises, Inc.* (1989), reaffirms the primacy of plain language in statutory interpretation."

---

[1] "Section 12102(b)" refers to 42 U.S.C. § 12102(b); "Section 12112(a)" refers to 42 U.S.C. § 12112(a).

[2] All ADA provisions use the term "record of such an impairment" to describe proof of a "disability" and, under the panel's opinion, those sections would also be superfluous. *See* 42 U.S.C. § 12111; 42 U.S.C. § 12112(b)(1); 42 U.S.C. § 12112(b)(2); 42 U.S.C. § 12112(b)(3).

The panel's opinion ignores this fundamental principle of statutory interpretation by using a different interpretation for "record of such impairment" and "Social Security Disability Income" in different cases even though Congress purposefully applies this standard to all ADA statutes that use the term "disability".

3.      **The Panel's Interpretation of Section 9-3-96 (2020) Conflict with Supreme Court Precedent Regarding Statutory Interpretation.**

    *a.*    *Statutory Interpretation Should Not Render Other Provisions of the Statute Superfluous.*

The Supreme Court has clearly stated that a statute's language must be interpreted in light of other sections of the statute. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36 (1998). Various sections of a statute should be construed in concert so that "no clause, sentence or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

The panel's interpretation of Section 9-3-96 (2020) renders Section 413(2) as well as numerous other statues that use the term "tolling of limitations for fraud", superfluous. Section 9-3-96 (2020) determines the "tolling of limitations for fraud of defendant", while 413(2) determines the tolling of limitations for fraud under ERISA. 29 U.S.C. § 1113(2), 9-3-96 (2020).

Under the panel's interpretation, "tolling of limitations for fraud" as used in Section 9-3-96 (2020) does not accept "concealment" or "actual fraud" as proof.

7

However, if that interpretation is correct, then Section 9-3-96 (2020) and 413(2) would not have to use the terms "concealment" or "actual fraud" to determine "tolling of limitations for fraud". As a result, Section 9-3-96 (2020) and 413 (2)'s use of those terms—is superfluous under the panel's opinion.[2]

Additionally, the use of specific language demonstrate congressional intent that those statutes used the same interpretation and standards. *Foster v. United States*, 303 U.S. 118, 120 (1938).

Specifically, "prominent cases where courts applied the "plain meaning rule" include: "*Caminetti v. United States,* 242 U.S. 470 (1917), which emphasized adherence to plain meaning in the absence of ambiguity". "*United States v. Ron Pair Enterprises, Inc.* (1989), reaffirms the primacy of plain language in statutory interpretation." The panel's opinion ignores this fundamental principle of statutory interpretation by applying a different interpretation for "tolling of limitations for fraud" in different cases even though Congress purposefully applies this standard to all actual fraud statutes that use the term "tolling of limitations for fraud ". *Foster v. United States*, 303 U.S. 118, 120 (1938).

---

[1] "Section 9-3-96 (2020)" refers to O.C.G.A. § 9-3-96 (2020); "Section 413(2)" refers to 29 U.S.C. § 1113(2).

[2] A number of other statutes also use the term "concealment and actual fraud" to toll statute of limitations and, under the panel's opinion these statutes would also be superfluous. See also, 15 U.S.C. § 1601 et seq; O.C.G.A. § 10-5-58.

## C. The Panel's Opinion Conflicts with Supreme Court Precedent Regarding Due Process, and the Plain Meaning Rule.

The panel's opinion conflicts with Supreme Court holdings by failing to properly apply an analysis of Fifth Amendment due process principles when interpreting a civil statute(s). *U.S. v. Ron Pair Enterprises*, 489 U.S. 235 (1989).

Due process principles require that a civil statute(s) must provide fair notice and a meaningful opportunity to be heard before the government can take away a person's property. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). "We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted... [*Mattox v. United States*, 156 U.S. 237, 244, 15 S. Ct. 337, 39 L. Ed. 409 (1895)]". "Courts should construe laws in harmony with the legislative intent and seek to carry our legislative purpose. [*Foster v. United States*, 303 U.S. 118, 120 (1938)]". "The principle that lower courts must follow precedents set by the Supreme Court is primarily supported by the doctrine of "stare decisis," and is solidified by the landmark case; *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)".

Specifically, the plain meaning rule, grounded in these due process principles, requires adherence to plain meaning in the absence of ambiguity. *Caminetti v. United States*, 242 U.S. 470 (1917). "*United States v. Ron Pair Enterprises, Inc.* (1989) reaffirming the primacy of plain language in statutory interpretation".

Unambiguous language in a civil statute(s) must be resolved in favor of Plaintiff. Under a long line of legal decisions, the outcome must restore the Plaintiff's rights. The panel's opinion ignores Plaintiff's due process rights under an unambiguous statute. In such a case(s) the proper analysis required application of the plain meaning rule. *U.S. v. Ron Pair Enterprises*, 489 U.S. 235 (1989).

**D.  Absent a Stay, Plaintiff Would Suffer Irreparable Harm and the Balance of Equities Favors Granting a Stay.**

Plaintiff's requested stay is for a maximum of 90 days (unless good cause to extend it is shown or a petition for certiorari is filed). Fed. R. App. P. 41(d)(2)(B). Absent a stay, Plaintiff would face irreparable injury and the balance of equities favors the Plaintiff. If the mandate issues, Plaintiff would face imminent financial ruin being disabled and unable to work since 2003. The loss of Fifth Amendment freedoms even for minimal periods of time is irreparable; being obligated to defend oneself in a civil proceeding predicated on a statute that failed to provide adequate notice to all parties involved in an alleged injury or damages, and failed to include due process principles, and binding authority precedent an/or is otherwise unconstitutional, constitutes irreparable injury to the Plaintiff. *Araneta v. United States*, 478 U.S. 1301 (1986).

The "loss of Fifth Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) (citation omitted).

10

"The record does not indicate that the Government would be prejudiced by further delay in a civil case" citing *United States v. Viscio* (426 U.S. 61, 1976)." There is no evidence suggesting that a further delay would negatively impact the government's abilities. The potential irreparable harm to Plaintiff thus outweighs any potential harm to the Government or the public, and the balance of equities favors the granting of the stay.

## CONCLUSION

For the foregoing reasons, the motion to stay the mandate pending a petition for writ of certiorari by the Plaintiff should be granted.

Date:   February 10, 2025

Respectfully submitted,

Jacqueline Everson
1530 Locust Log Way
Austell, GA 30168
(770) 573-4038
jaccieverson@gmail.com

11

## Certificate of Compliance

I hereby certify that this motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6). Page limitation is as required by FRAP 27(d)(2). This motion contains 2,363 words, excluding the parts of the brief exempted by 27(a)(2)(B).

This brief has been prepared using Microsoft Word in 14-point Times New Roman font.

Signed: February 10, 2025.

Jacqueline R. Everson
1530 Locust Log Way
Austell, GA 30168
(770) 573-4038

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

JACQUELINE EVERSON,     )

                      )

        Plaintiff-Appellant,    )

v.                     )

                     )    **Appeal Number: 24-11058-H**

                     )

COCA-COLA COMPANY, et al,  )

                     )

        Defendant-Appellee.  )

## <u>Certificate of Service</u>

I herby certify that on this <u>10th</u> Day of February, 2025, I filed Appellant's Motion to Stay the Mandate Pending Petition For Writ of Certiorari with the Clerk for the United States Court of Appeals, Eleventh Circuit. I certify that I have this day served Coca-Cola Co., et al, Defendant-Appellee by causing a copy to be deposited in the U.S Mail, postage prepaid and addressed as follows:

King & Spalding, LLP          Law Offices of Iwana Rademaekers, P.C.
Darren A. Shuler              Iwana Rademaekers
c/o The Coca-Cola Company     c/o Liberty Mutual Insurance Company
1180 Peachtree Street, N.E.       17304 Preston Road, Suite 800
Atlanta, GA 30309            Dallas, TX 75252

RESPECTFULLY SUBMITTED,

_JEverson_

JACQUELINE EVERSON
1530 Locust Log Way
Austell, Georgia 30168
Tel: 770-573-4038

13

# In the
# United States Court of Appeals
## For the Eleventh Circuit

---

No. 24-11058

---

JACQUELINE R. EVERSON,

Plaintiff-Appellant,

*versus*

THE COCA-COLA COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-02947-MLB

---

JUDGMENT

ISSUED AS MANDATE 1/29/2025

2                                    24-11058

It is hereby ordered, adjudged, and decreed that the opinion is-
sued on this date in this appeal is entered as the judgment of this
Court.

Entered: December 16, 2024

For the Court: DAVID J. SMITH, Clerk of Court

ISSUED AS MANDATE 1/29/2025

In the

# United States Court of Appeals

## For the Eleventh Circuit

No. 24-11058

JACQUELINE R. EVERSON,

Plaintiff-Appellant,

versus

THE COCA-COLA COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-02947-MLB

/s/ GBT

2                          Order of the Court                    24-11058

Before JILL PRYOR, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

The Petition for Panel Rehearing filed by Appellant Jacqueline R. Everson is DENIED.

[DO NOT PUBLISH]

## In the
# United States Court of Appeals
## For the Eleventh Circuit

---

No. 24-11058

Non-Argument Calendar

---

JACQUELINE R. EVERSON,

                                        Plaintiff-Appellant,

*versus*

THE COCA-COLA COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,

                                        Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-02947-MLB

---

Before JILL PRYOR, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

Jacqueline Everson, appearing *pro se*, appeals the District Court's dismissal of her claims against The Coca-Cola Company and Liberty Mutual Insurance Company for discrimination under federal and state law and fraud under Georgia law. Her claims stem from the termination of her long-term disability benefits in 2005 and her 2023 discovery of a document she argues exposes misconduct. While Everson asserts that her recent discovery revives her claims, the statutes of limitations governing her causes of action bar her suit. We affirm the District Court's dismissal.

## I.

Jacqueline Everson, a former senior financial analyst at Coca-Cola, began receiving long-term disability benefits in 2003. In March 2005, Liberty Mutual, acting as Coca-Cola's administrator, reevaluated her case and determined that she no longer met the criteria for disability under Coca-Cola's long-term disability plan. Her employment was terminated under a corporate restructuring, and her benefits ended.

Everson filed two previous lawsuits to challenge these decisions. First, in *Everson v. Coca-Cola Co.*, No. 1:05-cv-2301, 2006 WL 8432745 (N.D. Ga. Oct. 17, 2006), she accused Coca-Cola of terminating her employment in retaliation for bringing an unsuccessful employment discrimination suit. The District Court granted

summary judgment to Coca-Cola, and we affirmed. *See Everson v. Coca-Cola Co.*, 241 F. App'x 652 (11th Cir. 2007).

Second, in *Everson v. Liberty Mutual Assurance Co.*, No. 1:05-cv-2459, 2009 WL 73140 (N.D. Ga. Jan. 2, 2009), Everson alleged that Liberty Mutual wrongfully terminated her benefits in violation of the Employee Retirement Income Security Act (ERISA) and state law. Following a bench trial, the District Court ruled for Liberty Mutual, finding its denial of benefits neither arbitrary nor capricious. We dismissed Everson's appeal as untimely, and the United States Supreme Court denied certiorari. *Everson v. Liberty Mut. Assurance Co.*, 558 U.S. 946 (2009).

Nearly two decades later, in 2023, Everson initiated this lawsuit claiming she had discovered Coca-Cola's Long Term Disability Summary Plan Description. She asserted that this document proved Coca-Cola and Liberty Mutual violated their own policy by terminating her benefits prematurely. Everson alleged ongoing discrimination under Title I of the Americans with Disabilities Act (ADA), employment discrimination under O.C.G.A. § 34-6A-4, and fraud under Georgia law.

The District Court dismissed Everson's claims on multiple grounds.[1] It found her claims barred by the applicable statutes of limitations and concluded that she failed to demonstrate any basis for equitable tolling. The Court also determined that her claims

---

[1] The Magistrate Judge issued a Report & Recommendation, which the District Court adopted in full.

were precluded by res judicata, that Liberty Mutual was not a proper defendant, and that ERISA preempted her state-law claims. Everson appeals.

## II.

We review de novo the District Court's dismissal for failure to state a claim and its application of statutes of limitations. *Taylor v. Polhill*, 964 F.3d 975, 979 (11th Cir. 2020); *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1238 (11th Cir. 1999).

### A.    ADA Claims

Everson's ADA claims arise from the 2005 termination of her long-term disability benefits. Under the ADA, a plaintiff must file a charge with the Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged discriminatory act. 42 U.S.C. §§ 12117(a), 2000e-5(e)(1). Discrete acts, such as a benefits termination, occur on the day they happen, and the statute of limitations begins to run at that time. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S. Ct. 2061, 2070 (2002). Everson's benefits were terminated in March 2005, and her 180-day window to file an EEOC charge closed shortly thereafter.

Everson contends that her 2023 discovery of Coca-Cola's Long Term Disability Summary Plan Description constitutes new evidence of ongoing discrimination. But her argument misunderstands the nature of a discrete act under the ADA. The termination of her benefits was a one-time event, not a continuing violation. The continuing violations doctrine does not apply to discrete acts like a termination, even if the effects of those acts persist over time.

*City of Hialeah v. Rojas*, 311 F.3d 1096, 1101–02 (11th Cir. 2002). Everson's benefits were terminated in 2005, and her attempt to revive this claim nearly twenty years later cannot succeed.

Everson's reliance on equitable tolling fares no better. Tolling requires extraordinary circumstances and a showing that the plaintiff exercised reasonable diligence but was still prevented from filing on time. *Justice v. United States*, 6 F.3d 1474, 1479–80 (11th Cir. 1993). Everson alleges that Coca-Cola and Liberty Mutual concealed the Summary Plan Description during her earlier lawsuits, but she does not show that this document was unavailable through reasonable diligence at the time. Waiting nearly two decades to investigate her claims reflects a lack of diligence, not circumstances beyond her control. *See Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) ("Equitable-tolling is appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond [her] control and unavoidable even with diligence."). Equitable tolling cannot save her ADA claims, which are untimely by nearly two decades.

### B. State-Law Claims

Everson's state-law claims for fraud and employment discrimination are similarly time-barred. Georgia law imposes a four-year statute of limitations for fraud, running from the time the plaintiff suffers harm due to reliance on a false statement. O.C.G.A. § 9-3-31. Everson alleges that Coca-Cola and Liberty Mutual concealed the Summary Plan Description during her 2005 lawsuits, leading to the denial of her benefits. Even assuming her allegations

are true, her claims would have accrued when she lost her prior cases: October 17, 2006, in *Everson v. Coca-Cola Co.*, No. 1:05-cv-2301, and January 2, 2009, in *Everson v. Liberty Mutual Assurance Co.*, No. 1:05-cv-2459. The four-year statute of limitations expired long before she filed this lawsuit in 2023.

Similarly, Georgia law provides a 180-day limitations period for employment discrimination claims under O.C.G.A. § 34-6A-4. Everson's claims, based on the 2005 termination of her benefits, are untimely under this standard as well.

Equitable tolling does not apply to these claims either. Everson alleges that Coca-Cola and Liberty Mutual concealed the Summary Plan Description, but she provides no evidence that she took any steps to investigate her claims for nearly twenty years. Her 2023 discovery, long after her claims accrued, reflects inaction rather than diligence. Without evidence of reasonable efforts to discover her claims earlier, equitable tolling cannot excuse her delay. *See Justice*, 6 F.3d at 1479.

## III.

Everson's claims are time-barred under both federal and state law. Neither the continuing violations doctrine nor equitable tolling can revive them. And because all her claims are time barred, we do not address the District Court's other reasons for dismissal. We affirm.

**AFFIRMED.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Jacqueline R. Everson,

                Plaintiff,

                                 Case No. 1:23-cv-2947-MLB

v.

The Coca-Cola Company and
Liberty Mutual Insurance
Company,

                Defendants.

_____/

## ORDER

Plaintiff Jacqueline R. Everson, proceeding pro se, sued her former employer, The Coca-Cola Company, and the purported administrator of its long-term disability plan, Liberty Mutual Insurance Company, claiming they violated the Americans with Disabilities Act and several Georgia statutes. (Dkt. 1.) Defendants separately filed motions to dismiss. (Dkts. 3; 8.) Plaintiff filed two motions that she styled as motions for summary judgment "against Defendants' motions to dismiss"—though in reality, were responses to the motions to dismiss. (Dkts. 10; 11.) Magistrate Judge Catherine M. Salinas issued a Final

Report and Recommendation, saying the Court should grant Defendants' motions to dismiss, deny Plaintiff's "motions for summary judgment," and dismiss this case. (Dkt. 16.) Plaintiff objects. (Dkt. 18.)

"[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009). To that end, an objecting party must "specifically identify the portions of the [recommendation] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020).[1] "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). This is because reconsideration based on general and perfunctory objections "would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Godwin v. Comm. of Soc. Sec.*, 2017 WL 11113200, at *1 (M.D. Fla. Sept. 27, 2017).

---

[1] The Court recognizes *McCullars* is unpublished and not binding. The Court cites it nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

Accordingly, objections "which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge" are insufficient. *Marlite, Inc. v. Eckenrod*, 2012 WL 3614212, at *5 (S.D. Fla. Aug. 21, 2012); *see also Jones v. Ford*, 2023 WL 1790082, at *1 (M.D. Ga. Jan. 4, 2023) ("[A]n objection that 'merely restates the arguments previously presented[,] is not sufficient to alert the court to alleged errors on the part of the magistrate judge.'") (citation omitted). Similarly, objections that seek to "expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions" are improper. *Valido v. Kijakazi*, 2022 WL 4462069, at *3 (S.D. Fla. Sept. 26, 2022). Where a party fails to submit proper objections, "the district court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Clarke v. Adams*, 2022 WL 18232708, at *1 (N.D. Ga. Dec. 2, 2022).

Plaintiff's objections do nothing more than simply (and without additional explanation) disagree with the Magistrate Judge's conclusions, or "'rehash points raised in [her] response[s] in opposition'" to Defendants' motions to dismiss. *Jones*, 2023 WL 1790082, at *1

(citation omitted).    The Magistrate Judge issued a thorough, well-reasoned recommendation correctly determining that Plaintiff's claims fail for several reasons, including that she seeks to relitigate time-barred claims that were adjudicated nearly two decades ago, (in Liberty Mutual's case) that she failed to name the proper Defendant, and because her factual allegations are not sufficient to maintain several of her claims.   (Dkt. 16.)   In objecting, Plaintiff simply says—again, without explanation—that the Magistrate Judge was wrong or raises the same arguments she made before the Magistrate Judge on precisely the same points.    (*Compare* Dkt. 11-1 at 2 (contending "Plaintiff's claims for discrimination violations, is not barred by the doctrines of res judicata and/or collateral estoppel" and "[t]he Georgia two year statu[t]e of limitation for ADA under Title I claims does not apply here") with Dkt. 18 at 9, 18 (arguing "Res Judicata ERISA claims against Coca-Cola do not exist in this case" and "Plaintiff objects, because [Plaintiff] did state viable ADA claims against Coca-Cola in this case").)   None of that is enough to raise proper objections to the Magistrate Judge's conclusions.

To the extent the Court needs to review the recommendation for clear error—or under any other standard—the Court finds the Magistrate Judge's conclusions are correct.

The Court **OVERRULES** Plaintiff's Objections to the Report and Recommendation (Dkt. 18), **ADOPTS** the Report and Recommendation in full (Dkt. 16), **GRANTS** Defendants' Motions to Dismiss (Dkts. 3; 8), and **DENIES WITHOUT PREJUDICE** Plaintiff's "Motions for Summary Judgment Against Defendants' Motions to Dismiss" (Dkts. 10; 11). The Court **DISMISSES** this litigation.

**SO ORDERED** this 13th day of March, 2024.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

5

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JACQUELINE R. EVERSON,<br>          Plaintiff,<br><br>vs.<br><br>THE COCA-COLA COMPANY,<br>LIBERTY MUTUAL INSURANCE<br>COMPANY,<br>          Defendants. | CIVIL ACTION FILE<br><br>NO.  1:23-cv-02947-MLB |

## J U D G M E N T

This action having come before the court, Michael L. Brown, United States District

Judge, for consideration of the magistrate's report and recommendation, and the court

having adopted the same, it is

**Ordered and Adjudged** that the action be **DISMISSED.**

Dated at Atlanta, Georgia this 13th day of March, 2024.


          KEVIN P. WEIMER
          CLERK OF COURT


By:   s/ K. Gardner
       Deputy Clerk

Prepared, filed, and entered
in the Clerk's Office
March 13, 2024
Kevin P. Weimer
Clerk of Court


By:   s/ K. Gardner
      Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JACQUELINE R. EVERSON,

    Plaintiff,

v.

THE COCA-COLA COMPANY and
LIBERTY-MUTUAL INSURANCE
COMPANY,

    Defendants.

CIVIL ACTION NO.
1:23-cv-2947-MLB-CMS

## FINAL REPORT AND RECOMMENDATION

Plaintiff Jacqueline R. Everson ("Everson"), proceeding without an attorney, has filed this action against her former employer, The Coca-Cola Company ("Coca-Cola") and the purported administrator of Coca-Cola's long-term disability ("LTD") plan, Liberty Mutual Insurance Company ("Liberty"). Everson asserts several claims, including claims that (1) Defendants discriminated against her based on a disability, in violation of the Americans with Disabilities Act ("ADA") (Counts I–IV), (2) Defendants violated Georgia Code Section 16-4-9 by disregarding Everson's "humanitarian rights," thereby giving rise to a "disparate impact" claim (Count V), (3) Defendants' fraudulent conduct entitles her to a "remedy to restore" pursuant to Georgia Code Sections 23-4-2 and 11-2-721, including a declaratory

judgment finding that Defendants violated her rights under the ADA and Georgia law, as well as equitable relief and money damages (Count VI), and (4) Defendants are liable for attorney's fees and costs under Georgia Code Section 13-6-11 (Count VII). [Doc. 1, Compl.].

This matter is before the Court on Liberty's Motion to Dismiss for Failure to State a Claim [Doc. 3], on Coca-Cola's Motion to Dismiss for Failure to State a Claim [Doc. 8], and on Everson's Motions for Summary Judgment [Doc. 10; Doc. 11]. For the following reasons, I agree with Liberty and Coca-Cola that Everson's Complaint fails to state viable claims for relief. I will recommend that the motions to dismiss be granted and that Everson's motions for summary judgment be denied without prejudice.

## I.   **BACKGROUND**

### A.   **Everson's Allegations**[1]

Everson resides in Austell, Georgia. [Compl. ¶ 4]. Everson served as a senior financial analyst for Coca-Cola for seventeen years. [*Id.* ¶ 7]. Everson states that

---

[1] The following facts are taken from Everson's Complaint and are accepted as true for purposes of resolving the motion to dismiss. *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam).

Coca-Cola hired Liberty on April 4, 2024 to evaluate her disability under the LTD plan. [*Id.* at 5–6].

Briefly, Everson alleges that she recently learned that Coca-Cola is discriminating against her based on a disability because Coca-Cola has given her two conflicting classifications: (1) "totally disabled," for purposes of the early retirement pension that she currently receives; and (2) "not disabled," for all other privileges of employment. [Compl. ¶ 8]. Everson states that Coca-Cola refused to answer questions concerning those classifications, and she argues that Coca-Cola is excluding her or denying her equal jobs or benefits because of a known disability. [*Id.*]. Everson alleges that Coca-Cola deliberately misclassified her. [*Id.*]. According to Everson, Liberty disregarded her disability evidence, including (1) her Social Security Disability Insurance ("SSDI") results, (2) her Coca-Cola disability evaluation results, (3) results from Liberty's own disability evaluation, and (4) records from Everson's doctor. [*Id.*].

Everson alleges that Coca-Cola and Liberty worked together to discriminate against her based on her disability and improperly found that she was not disabled as of March 2005. [Compl. ¶ 8; *see also id.* at 7]. Everson contends that Coca-Cola is denying her benefits that other disabled employees are eligible to receive and is thereby discriminating against her. [*Id.* ¶ 8]. According to Everson, Coca-Cola

deliberately gave her conflicting classifications "to terminate and limit [her] employment privileges." [*Id.* at 5].

Everson states that on August 29, 2003, she was approved for SSDI benefits and classified as having a "permanent disability" for purposes of SSDI. [Compl. at 5, 8]. Everson cites an email from Coca-Cola administrators that supposedly stated that one of the administrators planned to work with Liberty to make sure that no other similar cases "sneak out." [*Id.*]. Everson alleges that on March 29, 2005, Liberty sent her a letter stating that it had maintained its original decision that Everson was no longer considered disabled from her own occupation under the LTD plan and was not entitled to disability benefits under the plan. [*Id.* at 7; *see also* Liberty Ex. B (Doc. 3-1 at 54–55)].[2] Liberty denied Everson's claim for disability

---

[2] "[A] court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) the plaintiff refers to certain documents in the complaint, (2) those documents are central to the plaintiff's claim, and (3) the documents' contents are undisputed." *Baker v. City of Madison, Ala.*, 67 F. 4th 1268, 1276 (11th Cir. 2023) (internal quotation marks and citations omitted). "Evidence is 'undisputed' in this context if its authenticity is unchallenged." *Id.*

Here, the Court may consider the LTD plan documents, Liberty's letter upholding the decision to terminate benefits under the plan, and the pension plan documents in connection with the motion to dismiss. Everson refers to the documents in her Complaint, the documents are central to Everson's claims, and Everson has not challenged the authenticity of those documents. *Baker*, 67 F. 4th at 1276.

benefits under the LTD plan because an independent medical examiner concluded that Everson could perform full-time sedentary work, and Liberty found that additional medical information Everson provided did not warrant altering the independent medical examiner's conclusion. [Liberty Ex. B at 1].

On March 30, 2005, Coca-Cola terminated Everson's employment and found that she was "not disabled." [Compl. at 5, 7]. Everson, however, alleges that Coca-Cola classified her as "totally disabled" on September 1, 2013, when she began receiving an early retirement pension from Coca-Cola. [*Id.*].

Everson alleges that Coca-Cola and Liberty acted maliciously and oppressively, with a conscious disregard of Everson's "humanitarian rights." [Compl. at 9]. Everson states that this conduct caused her injury. [*Id.*].

Everson seeks a declaratory judgment holding that Defendants violated her rights under the ADA and Georgia law. [Compl. at 9]. Everson also seeks monetary damages, including costs and attorney's fees. [*Id.* at 9–10].

**B.     The Pension Plan**

Coca-Cola's pension plan permits a previously terminated vested employee who completed at least ten years of vesting service at the time of termination to begin receiving pension benefits when that employee reaches age 55. [Coca-Cola's Ex. (Doc. 8–1) at 38]. Coca-Cola claims that Everson began receiving benefits under

5

the pension plan because she reached age 55, not because Coca-Cola concluded that Everson was disabled. [Doc. 8 at 4].

### C.   The Previous Lawsuits

Everson filed two previous lawsuits relating to the events outlined in the Complaint. Those previous lawsuits are discussed in turn below.

### 1.   Previous Lawsuit Against Coca-Cola

On August 1, 2005, Everson filed a lawsuit against Coca-Cola in the State Court of Fulton County, Georgia ("*Coca-Cola I*"), alleging that Coca-Cola wrongfully terminated her employment, interfered with her disability benefits, wrongfully terminated her medical insurance benefits, denied her a severance payment, and negligently supervised other Coca-Cola employees who caused the alleged violations and that Coca-Cola's treatment of Everson amounted to a "disparate impact." *Everson v. Coca-Cola Co.*, No. 1:05-cv-2301-RWS, 2006 WL 8432745, at *1–2 (N.D. Ga. Oct. 17, 2006), *aff'd*, 241 F. App'x 652 (11th Cir. 2007). Coca-Cola removed that lawsuit to this Court. *Id.* at *2. The district judge granted summary judgment in favor of Coca-Cola on all of Everson's claims. *Id.* at *4–7. Everson appealed, and the Eleventh Circuit affirmed the district judge's decision. *Everson v. Coca-Cola Co.*, 241 F. App'x 652 (11th Cir. 2007).

## 2.   Previous Lawsuit Against Liberty

On September 21, 2005, Everson filed a lawsuit in this Court against Liberty under the Employee Retirement and Income Security Act of 1974 ("ERISA"), alleging that Liberty improperly denied her claim for disability benefits under the Coca-Cola LTD plan ("*Liberty I*"). [Liberty's Ex. D (Doc. 3-1 at 65–75)].[3] Following a bench trial, the district judge issued an order on January 2, 2009 in favor of Liberty, finding that Liberty's decision to terminate Everson's benefits under the LTD plan was not arbitrary and capricious. [Liberty's Ex. E (Doc. 3-1 at 76–115)]. On that same day, the Clerk entered judgment in favor of Liberty and against Everson. [Liberty's Ex. F (Doc. 3-1 at 116)]. Everson appealed, but the Eleventh Circuit dismissed Everson's appeal for lack of jurisdiction because her notice of appeal was untimely. [Liberty's Ex. G (Doc. 3-1 at 118–119)]. Everson then sought a writ of certiorari, but the Supreme Court denied her petition for certiorari. [Liberty's Ex. H (Doc. 3-1 at 120)].

---

[3] A court may take judicial notice of matters of public record, such as court documents, without converting a motion to dismiss for failure to state a claim for relief into a motion for summary judgment. *Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 807 (11th Cir. 2009).

7

### D.   Procedural History

On July 3, 2023, Everson filed this lawsuit.  [Compl.].  On July 31, 2023, Liberty filed its motion to dismiss [Doc. 3].  On August 4, 2023, Coca-Cola filed its motion to dismiss.  [Doc. 8].  On August 11, 2023, Everson filed her motions for summary judgment, styling her motions for summary judgment as filed "against Defendants' motion to dismiss."  [Doc. 10 at 1; Doc. 11 at 1].  The Parties have fully briefed the pending motions.

## II.   <u>MOTIONS FOR SUMMARY JUDGMENT</u>

Everson filed two motions for summary judgment in this action, as well as a reply in support of the motions.  [Doc. 10; Doc. 11; Doc. 15].  Everson styled her motions as filed "against Defendants' motion to dismiss."  [Doc. 10 at 1; Doc. 11 at 1].  The motions therefore appear to be responses to the motions to dismiss, and I have considered the arguments that Everson raised in the motions and in her reply in connection with the motions to dismiss.

To the extent that Everson actually intended to file motions for summary judgment, her motions are procedurally improper because she failed to attach statements of material facts to the motions as required by Local Rule 56.1(B)(1). *See* LR 56.1(B)(1), NDGa. ("A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to

which the movant contends there is no genuine issue to be tried."). Although Everson

is proceeding pro se in this action, she still must comply with the Local Rules and

the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837

(11th Cir. 1989) ("once a pro se IFP litigant is in court, he is subject to the relevant

law and rules of court"); *Calhoun v. Wal-Mart Stores East, LP*, No. 1:14-cv-2581-

CC, 2017 WL 9362708, at *1 (N.D. Ga. July 24, 2017) ("The Court recognizes that

Plaintiff is proceeding pro se, but pro se litigants still must comply with procedural

rules."). The motions for summary judgment should be denied without prejudice for

failure to comply with the Local Rules.

As discussed above, Everson's motions for summary judgment appear to be

responses to the motions to dismiss, rather than actual substantive motions.

Alternatively, the motions do not comply with the Local Rules. I, therefore,

recommend that the motions for summary judgment be denied without prejudice.

### III.   MOTIONS TO DISMISS

#### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a

complaint, or portions thereof, for "failure to state a claim upon which relief can be

granted." FED. R. CIV. P. 12(b)(6). When reviewing a motion to dismiss, the Court

must take the allegations of the complaint as true and must construe those allegations

in the light most favorable to the plaintiff. *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam). Although a court is required to accept well-pleaded facts as true and make reasonable inferences in favor of the plaintiff, it is not required to accept the plaintiff's legal conclusions or unwarranted deductions of fact. *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (per curiam) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (per curiam).

A court may dismiss a complaint if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Chandler*, 695 F.3d at 1199 (internal quotation marks and citation omitted). The Supreme Court has stated that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"). Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and footnote omitted).

Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

10

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant might have acted unlawfully is insufficient to allow a claim to survive a motion to dismiss. *Id.* Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. However, the factual allegations in a complaint can be sufficient to survive a motion to dismiss even though recovery may be remote or unlikely. *Id.* at 555–56. As long as the facts alleged create a reasonable expectation that discovery will reveal evidence of the necessary elements, the plaintiff's suit should continue. *Id.* at 556.

Where, as here, a plaintiff files a complaint pro se, the Court must liberally construe the complaint and hold it to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A pro se plaintiff, however, still must comply with the threshold requirements of the Federal Rules of Civil Procedure and allege facts sufficient "to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

### B.   Liberty's Motion to Dismiss

Liberty moves to dismiss Everson's Complaint for failure to state viable claims for relief against it. [Doc. 3]. Liberty argues that the Complaint fails to state viable claims against it because: (1) it is not the proper defendant in this action; (2) Everson's claims against it are barred by res judicata or collateral estoppel, (3)

11

ERISA preempts Everson's state law claims, (4) Everson fails to state viable ADA claims against Liberty, and (5) the applicable statutes of limitations bar Everson's claims. [*See generally* Doc. 3-1]. For the following reasons, I agree with Liberty that Everson's Complaint does not state viable claims for relief against it, and I will recommend that Liberty's motion to dismiss be granted..

### 1.   Liberty Is Not a Proper Defendant

Liberty argues that it is not a proper defendant in this action. [Doc. 3-1 at 8–9]. According to Liberty, it cannot be liable to Everson because another, separate entity named "Liberty Life Assurance Company of Boston" issued the LTD plan and denied Everson's claim for long-term disability benefits. [*Id.*].

First, Liberty cannot be liable to Everson as the issuer of the LTD plan. The LTD plan states that an entity called "Liberty Life Assurance Company of Boston" is the issuer of the plan. [Liberty Ex. A (Doc. 3-1 at 16–53) at 1]. Without information showing that Liberty and "Liberty Life Assurance Company of Boston" are the same entity, it does not appear that Liberty could be liable to Everson as the issuer of the LTD plan.

Second, Liberty cannot be liable to Everson for denying Everson's claim for LTD benefits. Liberty did not deny Everson's claim for LTD benefits under the plan. The letter denying Everson's claim for benefits under the LTD plan was

printed on letterhead stating "Liberty Mutual," but the address on the letter indicated that "Liberty Life Assurance Company of Boston" issued the letter.  [Liberty Ex. B (Doc. 3-1 at 54–55) at 1].  Nothing shows that Liberty and "Liberty Life Assurance Company of Boston" are the same entity, and Liberty cannot be liable to Everson for denying her claim for benefits under the LTD plan.

For the above reasons, Liberty Life Assurance Company of Boston, not Liberty, would appear to be the proper defendant in this action.  Because Liberty is not the proper defendant in this action, Everson's Complaint fails to state viable claims against Liberty.  Liberty's motion to dismiss should be granted on this ground alone.  –

**2.    Res Judicata Bars Everson's ERISA Claims Against Liberty**

Alternatively, Liberty argues that res judicata bars Everson's ERISA claims against it because those claims have already been litigated and resolved adversely to Everson in *Liberty I.*  [Doc. 3-1 at 10–11].  Everson's claims against Liberty all relate to the denial of Everson's claim for benefits under Coca-Cola's LTD plan.  Everson challenged that denial in *Liberty I.*  In *Liberty I,* the district judge issued an order holding that Liberty's decision to deny Everson disability benefits under the LTD plan was not arbitrary and capricious.  [Liberty's Ex. D].  Following that decision, the Clerk entered judgment in favor of Liberty and against Everson.  [Liberty's Ex.

F]. Everson appealed from the judgment against her, and the Eleventh Circuit dismissed Everson's appeal. [Liberty's Ex. G]. Everson attempted to seek certiorari to appeal the Eleventh Circuit's decision, but the Supreme Court denied her petition for certiorari. [Liberty's Ex. H].

Res judicata operates to preclude a party from re-litigating issues in a later proceeding that were or could have been raised in a prior action. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."); *Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) (explaining that res judicata "bars the filing of claims which were raised or could have been raised in an earlier proceeding") (internal quotation marks and citation omitted). The purpose of res judicata is to relieve parties of the significant costs of vexatious litigation, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on the finality of an adjudication. *Shurick v. Boeing Co.*, 623 F.3d 1114, 1116 (11th Cir. 2010). Res judicata is intended to apply even if some new factual allegations have been made, new relief has been requested, or a new defendant has been added. *Id.* at 1116–17.

14

Res judicata will bar a claim if: (1) there was a final judgment on the merits in the earlier case; (2) the first decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same causes of action are involved in both cases. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). If those elements are present, "[t]he court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). As discussed below, this case satisfies all four elements for res judicata.

First, the decision denying Everson's claims against Liberty in *Liberty I* was a final adjudication on the merits. *See Hilliard v. Gutierrez*, No. 21-cv-20513-BLOOM/Otazo-Reyes, 2021 WL 2712122, at *9 (S.D. Fla. July 1, 2021) ("In a conventional case, [a] final order is one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment.") (alteration in original) (internal quotation marks and citations omitted). Second, the decision was rendered by a court of competent jurisdiction. Third, this case and *Liberty I* both involve claims against Liberty. Fourth, the claims asserted in this case and in *Liberty I* all arise out of the same nucleus of operative fact and involve the decision to deny

Everson benefits under the LTD plan. This case, therefore, satisfies all four of the elements for res judicata.

Everson argues that res judicata does not bar this action because she is attempting to litigate allegedly new improper conduct by Liberty and Coca-Cola. All of Everson's claims against Liberty, however, arise from the denial of her claim for long-term disability benefits under the LTD plan. Although Everson may attempt to assert some new claims against Liberty in this case, there are no facts alleged in the current Complaint establishing that Everson could not have raised those claims against Liberty in *Liberty I.* The claims, therefore, are barred by res judicata. *See McNear v. Wells Fargo Bank, N.A.*, No. 3:14-cv-195-TCB-RGV, 2015 WL 11571039, at *8 (N.D. Ga. May 11, 2015) (concluding that res judicata applies "not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact") (internal quotation marks and citation omitted), *adopted by* 2015 WL 12086096 (N.D. Ga. June 17, 2015), *aff'd*, 651 F. App'x 928 (11th Cir. 2016).

Res judicata, therefore, bars the claims that Everson asserts in this lawsuit against Liberty. Liberty's motion to dismiss should be granted on this ground as well.

### 3.    ERISA Preempts Everson's State Law Claims

Liberty also argues that ERISA preempts Everson's state law claims. [Doc. 3-1 at 7–8]. ERISA contains a preemption provision stating that ERISA's statutes "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). ERISA, therefore, preempts state law claims that have a "connection with" the administration of an ERISA plan. *See Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 721–722 (11th Cir. 1996) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)). State law claims have a connection with an ERISA plan and are preempted if the state law claims "are based upon the failure of a covered plan to pay benefits." *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 & n.5 (11th Cir. 1996).

Everson's state law "disparate impact," "remedy to restore," and attorney's fees claims clearly have a connection with an ERISA plan. Those state law claims all arise out of the same facts underlying the denial of Everson's claim for benefits under the LTD plan and involve Liberty's alleged actions in evaluating Everson's claim for benefits under the LTD plan. The state law claims, therefore, are preempted under Section 514(a) of ERISA. *See Jones v. LMR Int'l, Inc.*, 457 F.3d

1174, 1179 (11th Cir. 2006) (noting that ERISA preempts state law claims that relate to an ERISA plan); *see also Burden v. Reliastar Life Ins. Co.*, No. 1:12-cv-4392-WSD, 2014 WL 26090, at *9 (N.D. Ga. Jan. 2, 2014) ("It is settled law that ERISA preempts claims for breach of contract, fraud and bad faith that arise under Georgia law."). Because ERISA preempts Everson's state law claims against Liberty, those claims should be dismissed.[4]

**4.     Everson Fails to State ADA Claims Against Liberty**

Liberty further argues that Everson's Complaint fails to state viable ADA claims against it. According to Liberty, Everson may not assert ADA claims against it because Liberty is not an employer or other covered entity under the ADA. [Doc. 3-1 at 9–10].

ADA claims may be asserted only against an employer. *See Braun v. Cadence Healthcare Sols., LLC*, No. CV419-101, 2022 WL 3570344, at *9 (S.D. Ga. Aug. 18, 2022) (noting that the ADA grants relief only as to an employer); *Starkey v. Colquitt Cnty. Bd. of Comm'rs*, No. 7:14-cv-19-HL, 2014 WL 6679117, at *4 (M.D. Ga. Nov. 25, 2014) ("An action under the ADA may only be maintained against the

---

[4] Everson argues that ERISA does not preempt her ADA claim. [Doc. 10 at 1–2, 7, 9; Doc. 10-1 at 2, 12; Doc. 11 at 2; Doc. 11-1 at 2, 12]. Coca-Cola and Liberty, however, do not contend that ERISA preempts Everson's ADA claim.

employer itself.") (internal quotation marks and citation omitted).  Here, Everson's

allegations establish that Coca-Cola, not Liberty, was her employer, and she has not

alleged facts to show that Liberty was otherwise a covered entity subject to suit under

the ADA.  *See* 42 U.S.C. § 12112(a) (providing that "[n]o covered entity shall

discriminate against a qualified individual on the basis of a disability"); *see also* 42

U.S.C. § 12111(2) (defining a "covered entity" for purposes of the ADA as "an

employer, employment agency, labor organization, or joint labor-management

committee").  Everson, therefore, cannot assert an ADA claim against Liberty, and

Liberty's motion to dismiss should be granted as to Everson's ADA claims asserted

against it.

> **5.     The Applicable Statutes of Limitations Bar Everson's
> Claims Against Liberty**

Liberty also argues that Everson's claims against it are barred by the

applicable statutes of limitations.  [Doc. 3-1 at 12–13].  Everson's claims against

Liberty are based on conduct that occurred, at the latest, in 2005, when Liberty

denied Everson's claim for benefits under the LTD plan.  [Liberty Ex. B].  Although

Everson alleges that she has newly acquired" evidence, it is clear from the

allegations of her Complaint that this evidence only applies to Coca-Cola.  [Compl.

¶ 8].  Everson's claims against Liberty therefore arose, at the latest, in 2005.

Everson argues that she has claims for "ongoing discrimination." [Doc. 11 at 2; Doc. 11-1 at 1–2].   It is abundantly clear, however, that any claim Everson may assert against Liberty arises from the denial of Everson's claim for LTD benefits in 2005.   As discussed below, the fact that Everson may still feel the effects of that denial does not mean that she has a claim for ongoing discrimination.   Everson's claims against Liberty thus arose in 2005 at the very latest.

Everson's claims relating to the denial of her claims for benefits under the LTD plan are time-barred.   ERISA does not set forth a statute of limitations for suits brought to recover benefits, and courts "borrow the most closely analogous state limitations period." *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998).   In Georgia, ERISA claims must be brought within the six-year statute of limitations applicable to claims for breaches of written contracts set forth in Georgia Code Section 9-3-24, unless the relevant plan document provides for a reasonable shorter period of time.   *See id.*; *Washington v. Verizon Commc'ns, Inc.*, No. 3:11-cv-29(CDL), 2012 WL 2025259, at *4 (M.D. Ga. June 5, 2012); *see also* O.C.G.A. § 9-3-24 ("All actions upon simple contracts in writing shall be brought within six years after the same become due and payable.").   Here, the LTD plan stated that claims under the plan must be brought within one year from when proof of claim is required.   [*See* Liberty's Mot. Dismiss

20

Ex. A (Doc. 3-1 at 16–54), Section 7 – General Provisions, Legal Proceedings]. Both the one-year limitations period provided in the LTD plan and the six-year limitations period set forth in Georgia Code Section 9-3-24 expired long before Everson filed this action. Everson's ERISA claims, therefore, are time-barred.

Further, even if Everson could assert ADA claims against Liberty, the statute of limitations would bar those claims. Although the ADA does not contain a statute of limitations, courts apply the two-year limitations period applicable to personal injury claims set forth in Georgia Code Section 9-3-3 to ADA claims in Georgia. *See Kennedy v. South Univ.*, No. 4:21-cv-172, 2022 WL 628541, at *4 (S.D. Ga. Mar. 3, 2022); *see also* O.C.G.A. § 9-3-33 ("[A]ctions for injuries to the person shall be brought within two years after the right of action accrues, except for injuries to the reputation, which shall be brought within one year after the right of action accrues, and except for actions for injuries to the person involving loss of consortium, which shall be brought within four years after the right of action accrues."). Any ADA claim that Everson may assert clearly arose more than two years before Everson filed this lawsuit. Thus, even if Everson could assert ADA claims against Liberty, those claims would be time-barred.

Finally, even if ERISA did not preempt Everson's state law claims, all of Everson's state law claims would be time-barred. First, a four-year statute of

limitations would apply to Everson's fraud claims. *See GE Life & Annuity Assur. Co. v. Barbour*, 189 F. Supp. 2d 1360, 1366 (M.D. Ga. 2002) ("The statute of limitations for fraud claims in Georgia is four years."); *see also* O.C.G.A. § 9-3-31 (setting forth a four-year statute of limitations for injuries to personal property).) Second, a two-year statute of limitations would apply to any personal injury claim that Everson may assert. *See* O.C.G.A. § 9-3-33 (setting forth a two-year limitations period for personal injury claims). Third, a six-year limitations period would apply to any breach of contract claims that Everson may assert. *See* O.C.G.A. § 9-3-24 (providing for a six-year limitations period for claims based on a written contract). Everson's state law claims against Liberty are based on events that arose long before Everson filed this action, and any of the potentially applicable statutes of limitations would bar those claims.

For the above reasons, all of Everson's claims against Liberty are time-barred. Liberty's motion to dismiss should be granted, and Everson's claims against Liberty should be dismissed.

### C.   Coca-Cola's Motion to Dismiss

Coca-Cola also moves to dismiss Everson's Complaint for failure to state viable claims for relief against it. [Doc. 8]. Coca-Cola argues that (1) Everson's claims against it are barred by res judicata, (2) Everson's ADA claims are barred by

22

the statute of limitations and by Everson's failure to exhaust administrative remedies; and (3) Everson fails to state viable state law claims. [*See generally id.*]. Everson opposes Coca-Cola's motion, arguing, among other things, that Coca-Cola failed to file the motion to dismiss in a timely fashion. For the following reasons, I find that Coca-Cola's motion to dismiss is timely, and I will recommend that Coca-Cola's motion to dismiss be granted.

### 1.    Coca-Cola Timely Filed its Motion to Dismiss

Everson argues that Coca-Cola's motion to dismiss should be denied as untimely because Coca-Cola failed to file the motion within thirty days after Everson served Coca-Cola. [Doc. 10 at 3, 7, 13–14; Doc. 10-1 at 3, 10, 16; Doc. 11 at 2, 4; Doc. 11-1 at 3, 10, 16]. According to Everson, Coca-Cola is in default. [Doc. 10 at 3, 7, 13–14; Doc. 10-1 at 3, 10, 16; Doc. 11 at 2, 4; Doc. 11-1 at 3, 10, 16].

Everson filed a corrected certificate of service indicating that she mailed a copy of the Complaint to Coca-Cola on July 12, 2023. [Doc. 2].[5] Coca-Cola ordinarily would have twenty-one days from the date of service, or through August 2, 2023, to respond to the Complaint. FED. R. CIV. P. 12(a)(1)(A)(i). Here, however,

---

[5] Coca-Cola does not argue that Everson failed to serve it properly with process. [*See generally* Doc. 13].

Coca-Cola had three extra days—or through August 5, 2023—to respond to the Complaint because Everson served Coca-Cola via mail. FED. R. CIV. P. 6(d). Because that deadline fell on a Saturday, Coca-Cola's time to respond to the Complaint was extended until the following Monday, August 7, 2023. FED. R. CIV. P. 6(a)(3). Coca-Cola filed its motion to dismiss on August 4, 2023. I, therefore, find that Coca-Cola timely filed its motion to dismiss.

### 2. Res Judicata Bars Everson's Claims Against Coca-Cola

Coca-Cola argues that res judicata bars Everson's claims against it. [Doc. 8 at 7]. Coca-Cola contends that Everson is attempting to relitigate events that occurred in 2005—the termination of her long-term disability benefits and the termination of her employment. According to Coca-Cola, those claims have been fully litigated in this Court.

As previously noted, res judicata will bar a claim if: (1) there was a final judgment on the merits in the earlier case; (2) the first decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same causes of action are involved in both cases. *Ragsdale*, 193 F.3d at 1238. All four of those elements are met in this case. The decision in *Coca-Cola I* was a final judgment on the merits, it was rendered by a court of competent jurisdiction, it involved both Everson and Coca-Cola, and it

involved the same causes of action and facts. Res judicata, therefore, applies to bar this action.

Everson argues that this case is about "seven adverse employment actions" that she has not litigated. [Doc. 11-1 at 11]. As discussed below, however, all of those "adverse employment actions," are simply repackaged grievances about acts that Everson previously litigated in *Coca-Cola I.*

Five of the allegedly new adverse employment actions relate to the 2005 termination of Everson's long-term disability benefits. Everson complains that: (1) Coca-Cola is currently discriminating against her because it terminated her long-term disability benefits notwithstanding the Social Security Administration's determination that she is disabled; (2) Coca-Cola has allegedly accepted Social Security decisions for other employees but refuses to do so for Everson; (3) Coca-Cola causes Everson "ongoing mental and physical harm" by maintaining that she is not disabled; (4) Coca-Cola has failed to explain to the Court that Everson receives Social Security benefits; and (5) the email that describes Everson's case as a "sneak out" shows that Coca-Cola "discriminated against [Everson's] Social Security Disability decision" and violated its own "Social Security Benefit policy in violation of [the] ADA." [Doc. 11-1 at 11–12]. Despite Everson's attempt to repackage those

25

claims, those are all issues that were, or should have been, previously litigated in *Coca Cola I.* Res judicata, therefore, bars those claims.

Everson's remaining two new "adverse actions" also relate to the termination of her employment in 2005. Specifically, Everson claims that: (1) Coca-Cola sent an email in 2005 stating that Everson's claim was a "sneak out"; and (2) "Coca-Cola threw [Everson] out like trash and did not even give her severance pay" when her employment terminated in 2005. [Doc. 11 at 11–12, 14–15]. Again, Everson's termination and the denial of severance were litigated in *Coca-Cola I.* Res judicata, therefore, bars those claims.

For the above reasons, res judicata bars Everson's claims against Coca-Cola. Coca-Cola's motion to dismiss should be granted for this reason alone.

### 3. Everson's ADA Claims Against Coca-Cola Fail

Coca-Cola next contends that Everson fails to state viable ADA claims against it. [Doc. 8 at 7–10]. Coca-Cola argues that Everson's ADA claims fail because the applicable statute of limitations bars the claims. [*Id.* at 7–8].

As previously discussed, a two-year statute of limitations applies to ADA claims in Georgia. Here, the adverse employment action at issue—Everson's termination—occurred in 2005, and the two-year statute of limitations expired long ago. Even if, as Everson contends, some adverse employment action occurred when

26

she began receiving pension plan benefits in 2013, that action occurred more than two years ago. Everson's ADA claims, therefore, are time-barred.

Everson contends that her ADA discrimination claims are not time-barred because she has a right-to-sue letter from the EEOC. [Doc. 11 at 13]. The EEOC letter, however, is actually a dismissal of Everson's EEOC Charge, and it states, in relevant part, "The EEOC is closing this charge because your charge was not filed within the time limits under the law; in other words, you waited too long after the date of the alleged discrimination to file your charge." [Doc. 11-1, Ex. A]. The EEOC letter itself demonstrates that Everson's ADA discrimination claims are indeed time-barred.

Everson also argues that her ADA claims are timely under the continuing violation doctrine because she faces ongoing discrimination. [Doc. 11-1 at 13; *see also* Doc. 15 at 6–7 (arguing that the continuing violations doctrine applies)]. This argument fails. The ADA "precludes recovery under the continuing-violations doctrine for discrete acts of discrimination or retaliation that occurred outside the statutory limitations period." *Abram v. Fulton Cnty. Gov't*, 598 F. App'x 672, 674–75 (11th Cir. 2015). Discrete acts are actions that are "easy to identify," such as the termination of employment or the termination of Everson's disability benefits. *Id.* at 675. All of the actions at issue in this case arise from discrete acts. The fact that

27

Everson does not like the continuing consequences that flow from those discrete acts does not make her claims timely or give rise to a continuing violation. *See id.* at 676 (finding that the district court correctly found that the continuing violations doctrine was inapplicable because all of the plaintiff's claims "involved discrete acts of alleged discrimination").

Everson also argues that her ADA claims are timely because she "recently discovered a Coca-Cola Social Security Benefit Policy that shows Coca-Cola is currently discriminating against [Everson]." [Doc. 11-1 at 12]. That discovery does not revive Everson's ADA claims, which are based on two discrete acts that occurred in 2005—the termination of Everson's long-term disability benefits and her employment. Everson may not revive her untimely ADA claims by arguing that she recently discovered this document or that Coca-Cola continues to refuse to pay her long-term disability benefits.

For the above reasons, Everson fails to state viable ADA claims against Coca-Cola. Coca-Cola's motion to dismiss should be granted as to Everson's ADA claims.

### 4. Everson's State Law Claims Against Coca-Cola Fail as a Matter of Law

Finally, Coca-Cola argues that Everson's Complaint fails to allege viable state law claims for relief against it. [Doc. 8 at 10–11]. I agree. Everson's state law claims against Coca-Cola, like her state law claims against Liberty, are preempted by ERISA fail because ERISA preempts Everson's state law claims and Everson's state law claims are time-barred. As discussed below, Everson's state law claims also fail because she does not allege plausible claims for relief.

#### a. Everson's "Disparate Impact" Claim Fails

In Count VI, Everson asserts a "disparate impact" claim under Georgia Code Section 16-14-9. That statute, however, is a criminal provision relating to Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act, and it pertains to the supplemental nature of civil remedies under that statute. *See* O.C.G.A. § 16-14-9. This case does not involve a criminal RICO prosecution or a civil RICO claim, and the "disparate impact" statute simply has no application to this case. Everson, therefore, fails to state a viable "disparate impact" claim.[6]

---

[6] To the extent that Everson intended to pursue a "disparate impact" claim under the ADA, that claim fails for the reasons previously discussed.

29

### b.   Everson's "Remedies for Fraud" Claim Fails

In Count VI, Everson seeks "remedies for fraud" under Georgia Code Sections 23-4-2 and 11-2-721. As discussed below, neither of those statutes gives rise to a viable claim for relief.

First, Georgia Code Section 23-4-2 governs how to plead a claim for extraordinary remedies under Georgia law, and it provides that "[a] claim for extraordinary relief or remedy to aid an action or defense may be asserted either by original pleading or by amendment." O.C.G.A. § 23-4-2. That statute simply has no relevance here.

Second, Georgia Code Section 11-2-721 relates to "[r]remedies for material misrepresentation or fraud" under Article 2 of Georgia's Uniform Commercial Code ("UCC"). O.C.G.A. § 11-2-721. Article 2 of Georgia's UCC does not apply here because this case does not involve "transactions in goods." *See* O.C.G.A. § 11-2-102 (setting forth the scope of Article 2 of Georgia's Uniform Commercial Code).

As discussed above, Everson fails to state viable fraud claims based on either Georgia Code Section 23-4-2 or Georgia Code Section 11-2-721. Those claims should be dismissed.

c.   **Everson's Claim for Attorney's Fees and Costs Fails**

In Count VII, Everson seeks attorney's fees and costs under Georgia Code Section 13-6-11. That statute "does not create an independent cause of action." *Walker v. Select Portfolio Servicing, Inc.*, No. 1:16-cv-3401-SCJ, 2017 WL 9516599, at *3 n.5 (N.D. Ga. Aug. 11, 2017). Instead, claims for attorney's fees and expenses under Georgia Code Section 13-6-11 "are derivative of Georgia tort law claims and thus require an underlying claim." *Perkins v. Thrasher*, 701 F. App'x 887, 891 (11th Cir. 2017) (per curiam). Here, all of Everson's underlying substantive claims fail, and her claim for attorney's fees and costs against Liberty under Georgia Code Section 13-6-11 is also due to be dismissed. *Id.*

d.   **Everson's New State Law Claim Fails**

In Everson's response to Coca-Cola's motion to dismiss, she argues that Coca-Cola violated Georgia Code Section 34-6A-4(a). [Doc. 11-1 at 13–15]. Everson did not include this claim in her Complaint, and she may not now amend her Complaint by asserting a new claim in her response to the motion to dismiss. *See Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (noting that a plaintiff failed to raise a constitutional challenge to a state's civil contempt procedures properly because the plaintiff raised the argument for the first time in his

response to the defendant's motion to dismiss, instead of seeking leave to file an amended complaint).

Even if Everson had included this claim in her Complaint, the claim would still fail because it is untimely. The claim is untimely because a civil action alleging a violation of Georgia Code Section 34-6-A-4(a) must be brought within 180 days after the allegedly prohibited conduct occurred, and the alleged acts of discrimination at issue in this case occurred more than 180 days before Everson filed this lawsuit. *See Chastain v. City of Douglasville*, No. 1:14-cv-4038-AT-CMS, 2017 WL 10753292, at *9 (N.D. Ga. Jan. 20, 2017), *adopted by* 2017 WL 10768465 (N.D. Ga. Feb. 23, 2017); *see also* O.C.G.A. § 34-6A-6(a) (providing that claims for violations of Georgia's Equal Employment for the Handicapped Code "shall be brought within 180 days after the alleged prohibited conduct occurred"). Everson, therefore, cannot state a claim for relief under Georgia Code Section 34-6A-6.

### f.   Summary

For the reasons discussed above, Everson's state law claims fail as a matter of law. Coca-Cola's motion to dismiss, therefore, should be granted as to Everson's state law claims.

## V.   <u>CONCLUSION</u>

Accordingly, I **RECOMMEND** that Everson's motions for summary judgment [Doc. 10, Doc. 11] be **DENIED WITHOUT PREJUDICE.** I further **RECOMMEND** that Liberty's motion to dismiss [Doc. 3] be **GRANTED** and that Everson's claims against Liberty be dismissed **WITH PREJUDICE.** Finally, I **RECOMMEND** that Coca-Cola's motion to dismiss [Doc. 8] be **GRANTED** and that Everson's claims against Coca-Cola be dismissed **WITH PREJUDICE.**

Because this is a Final Report and Recommendation, and there is nothing further in this action pending before the undersigned Magistrate Judge, the Clerk is **DIRECTED** to terminate the reference.

**SO REPORTED AND RECOMMENDED**, this the 22nd day of September, 2023.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE